CHEHARDY, C.J.
In this appeal appointed counsel for defendant challenges the trial court's acceptance of defendant's guilty pleas without further inquiry following defendant's initial reservation to pleading guilty to the charges filed against him. Further, defendant has filed a pro se supplemental brief arguing the ineffectiveness of his trial counsel resulting in his being forced to plead guilty. For the following reasons, we affirm defendant's convictions and sentences, and remand the matter for correction of the Uniform Commitment Orders.
Factual Background and Procedural History
In this case, defendant's convictions resulted from guilty pleas so the facts surrounding the offenses were gleaned from the bill of information. Here, the record reflects that, on or about July 19, 2017, defendant knowingly or intentionally possessed heroin with the intent to distribute in violation of La. R.S. 40:966(A), and *1182 knowingly or intentionally possessed fentanyl with the intent to distribute in violation of La. R.S. 40:967(A).
On August 29, 2017, the Jefferson Parish District Attorney filed a bill of information charging defendant, Terry England, with one count of possession with intent to distribute heroin in violation of La. R.S. 40:966(A) (count 1), and one count of possession with the intent to distribute fentanyl in violation of La. R.S. 40:967(A) (count 2). At his arraignment held on September 1, 2017, defendant pled not guilty.
Omnibus motions, which included motions to suppress evidence and a confession, were filed by defendant. The trial court heard and denied the motions to suppress on November 9, 2017.[1]
On December 5, 2017, defendant withdrew his not guilty pleas and, after executing a waiver of constitutional rights form, which was signed by defendant, defense counsel, and the trial judge, entered pleas of guilty as charged on both counts. After the trial court accepted the pleas, defendant was sentenced in accordance with the plea agreement. Specifically, the trial court sentenced defendant to fifteen years imprisonment at hard labor on count 1, with the first ten years to be served without benefit of probation, parole, or suspension of sentence. As to count 2, defendant was sentenced to ten years imprisonment at hard labor. The trial court also ordered the sentences to run concurrently with each other with defendant receiving credit for time served. The trial court assessed fees for defendant to pay to the Indigent Defender Board, the Jefferson Parish Sheriff's Office, and the Jefferson Parish Sheriff's Office crime lab. Additionally, the trial court recommended defendant for participation in any and all self-help programs available to him during his incarceration.
On May 3, 2018, defendant filed an application for post-conviction relief, asserting ineffective assistance of his trial counsel. On May 7, 2018, the trial court dismissed defendant's application without prejudice and granted him an out-of-time appeal. This appeal follows.
Law and Argument
On appeal, defendant assigns one counseled assignment of error and one pro se assignment of error. In his counseled assignment of error, defendant argues the trial court erred in accepting his guilty pleas without further inquiry after he professed his innocence during the plea colloquy. Additionally, defendant argues the record does not demonstrate that his guilty pleas were knowingly and voluntary entered based on assertions he made "in his application for post-conviction relief and in subsequent correspondence that his guilty plea was not a voluntary one." Defendant contends the trial court should have inquired further into the voluntariness of his pleas and, at the very least, asked defendant whether his "decision to plead guilty was in recognition that it was in his best interest to do so considering the evidence against him" in accordance with North Carolina v. Alford , 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).[2] Defendant does not move to have *1183 this Court set aside his guilty pleas; instead, defendant requests that the matter be remanded for "further inquiry."
The State argues that although defendant initially denied possession of the narcotics during the plea colloquy, defendant subsequently acknowledged his guilt and voluntarily continued with the guilty plea proceeding. Moreover, the State argues that since defendant acknowledged to the court that he had, in fact, committed the crimes to which he was pleading guilty, there was no need for the trial court to inquire further as to the voluntariness of defendant's guilty pleas. We agree.
Under both state and federal jurisprudence, it is well settled that an unqualified plea of guilty waives all non-jurisdictional defects in the proceedings leading up to the guilty plea. State v. Crosby , 338 So.2d 584, 588 (La. 1976) ; State v. Gumms , 17-566 (La. App. 5 Cir. 3/14/18), 243 So.3d 725, 730. Moreover, such a plea waives any right a defendant had to question the merits of the State's case and the factual basis underlying the conviction. State v. Hayes , 15-141 (La. App. 5 Cir. 8/25/15), 173 So.3d 1222, 1224, writ denied , 15-1789 (La. 9/23/16), 200 So.3d 364. A guilty plea is not considered valid unless it is freely and voluntarily made. State v. Payton , 04-1024 (La. App. 5 Cir. 1/11/05), 894 So.2d 362, 365. Under Boykin v. Alabama , 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the decision to plead guilty will not be considered voluntary unless, at the very least, the defendant has been advised of his constitutional rights against self-incrimination, to a trial by jury, and to confront his accusers. State v. Shelton , 09-713 (La. App. 5 Cir. 3/9/10), 39 So.3d 601, 602, writ denied , 10-839 (La. 11/5/10), 50 So.3d 812. The defendant's waiver of these rights must be expressly and knowingly made. State v. Williams , 384 So.2d 779, 780 (La. 1980). Moreover, this waiver must be on the record, and the record must unequivocally show that the defendant's waiver was free and voluntary. State v. Ursin , 98-435 (La. App. 5 Cir. 10/28/98), 720 So.2d 1248, 1249. The Louisiana Supreme Court has consistently stated that the knowing and intelligent nature of a defendant's waiver of rights " 'depends upon the circumstances of each case.' " State v. Filer , 00-0073 (La. 6/30/00), 762 So.2d 1080 (per curiam), quoting State v. Strain , 585 So.2d 540, 544 n. 7 (La. 1991).
Also, once a defendant is sentenced, only those guilty pleas that are constitutionally infirm may be withdrawn by appeal or post-conviction relief. A guilty plea is constitutionally infirm if it is not entered freely and voluntarily, if the Boykin colloquy is inadequate, or when a defendant is induced to enter the plea by a plea bargain or what he justifiably believes was a plea bargain and that bargain is not kept. State v. McCoil , 05-658 (La. App. 5 Cir. 2/27/06), 924 So.2d 1120, 1124.
Here, the record reveals that at the commencement of the guilty plea colloquy, trial counsel advised the court that defendant wished to withdraw his pleas of not guilty and plead guilty as charged in the bill of information. Trial counsel further advised that he had reviewed the waiver of rights form with defendant, and that defendant had initialed and signed the form.
On the waiver of rights form and during the colloquy with the trial judge, defendant *1184 was advised of his right to a jury trial, his right to confrontation, and his privilege against self-incrimination. Defendant signed the waiver of rights form, indicating that he understood he was waiving these rights by pleading guilty. During the colloquy with the trial judge, defendant also indicated that he understood that he was waiving these rights. Defendant advised that he was forty-five years old and had completed the tenth grade in school. Further, defendant expressed his understanding that he was pleading guilty to possession with intent to distribute heroin and to possession with intent to distribute fentanyl, and he was advised of the statutory definitions of those offenses.
Following a discussion during the colloquy regarding the minimum and maximum penalties for the charged offenses, defendant was asked by the trial judge to explain what occurred on July 19, 2017 that was causing him to plead guilty to possession with intent to distribute heroin and possession with intent to distribute fentanyl. At this juncture, defendant claimed that a "certain person ... hid some stuff in [his] truck ..." and attested that he "didn't have these drugs." In response to these assertions, the trial judge stated that if "[defendant] can't admit to a factual basis ...," she could not accept his guilty pleas and the matter would proceed to trial:
BY THE COURT:
Q. I am asking you what happened. I read to you the statute. You have to knowingly, intentionally possess with the intent to distribute heroin. Did you knowingly and intentionally possess heroin with the intent to distribute it?
A. No, ma'am.
THE COURT:
Then we have to go to trial.
THE WITNESS:
Yes, ma'am.
THE COURT:
I cannot accept the plea.
After reminding the trial court that defendant had previously given a video-taped statement confessing to his involvement in selling the drugs,[3] and that defendant was acting "against [his] advice, the facts and law," defense counsel requested a recess to consult with defendant, his client. Following a brief interruption in the proceedings, defendant and his counsel returned to the courtroom at which time the following exchange took place:
MR. REGAN:
Your Honor, I'm back here in the Court's presence with Mr. Terry England. I've had a chance to answer some additional questions from Mr. England at this point and the defendant wishes to plead guilty, take responsibility for the drugs that were in the car and take responsibility for the fact that he confessed to it on video tape when he was taken down to Maple Street, and would like the Court please [sic] to take his guilty plea pursuant to the plea agreement.
BY THE COURT:
Q. Mr. England, remember you are still under oath.
A. Yes, ma'am.
Q. And I guess I'm going to go about this a different way. Mr. England, did you confess to possessing heroin and fentanyl with the intent to distribute it when you were taken into custody at the Detective Bureau?
A. Yes, ma'am.
*1185 Thereafter, the guilty plea colloquy resumed:
Q. Mr. England, do you understand as to the heroin, the maximum sentence I can impose is fifty years at hard labor in the Department of Corrections with the first ten being without benefit of probation, parole or suspension of sentence?
A. Yes, ma'am.
Q. You understand that as to Count 2, the possession with intent to distribute fentanyl, the maximum sentence the Court can impose is ten years at hard labor in the Department of Corrections?[4]
A. Yes, ma'am.
Q. You understand the minimum sentence the Court can impose as to Count 1 is ten years without benefit of probation, parole or suspension of sentence?
A. Yes, ma'am.
Q. You understand the plea of guilty is your decision and no one can force you to so plead? You understand that to plead guilty is your voluntary act and must be free from any vice or defect which would render your ability to plead guilty inadequate. Has anyone used any force, intimidation, coercion or promise of reward to either you or any member of your family for the purpose of making or forcing you to plead guilty?
A. No, ma'am.
Q. Have you been advised by counsel that in the event I accept the plea of guilty that you would be sentenced as follows: The Court would sentence you to fifteen years at hard labor in the Department of Corrections on Count 1 and the first ten years would be served without benefit of probation, parole or suspension of sentence. As to Count 2, you would be sentenced to ten years in the Department of Corrections. Both Count 1 and Count 2 would run concurrent with each other and you would receive credit for time served and you would be responsible for paying certain fees; do you understand that, sir?
A. Yes, ma'am?
Q. Sir, you have a right to a trial by jury which jury may find you guilty as charged, guilty of a lesser crime or not guilty. You have the right to hire an attorney of your choice to defend you at trial. If you cannot afford an attorney, one would be appointed for you which would not cost you anything. By entering the plea of guilty you are waiving or giving up these rights. Do you understand that?
A. Yes, ma'am.
Q. At any jury trial you have the right to confront your accusers and cross-examine the witnesses against you and compel testimony on your behalf from your witnesses. By entering the plea of guilty you are waiving or giving up these rights; do you understand that?
A. Yes, ma'am.
Q. If you were to go on trial, in the event of a conviction, if a jury would find you guilty, you would have a right to an appeal. In the event of an appeal if you could not afford an attorney one would be appointed for you which would not cost you anything. By entering the plea of guilty you are waiving or giving up these rights; do you understand that?
A. Yes, ma'am.
Q. If you plead guilty and the Court accepts your plea, you do not have the right to assert any allegation or defects such as an illegal arrest, illegal search and seizure, illegal confession, illegal line-up or the fact that the State might *1186 not be able to prove said charge or that a jury would find you not guilty. Do you understand that by pleading guilty you are waiving or giving up these rights?
A. Yes, ma'am.
Q. You understand you have a right to waive a trial by jury and be tried by the court alone; do you understand by pleading guilty you are waiving or giving up these rights?
A. Yes, ma'am.
Q. You understand that by pleading guilty you are telling the Court that you have in fact committed the crime to which you are pleading guilty; is that correct?
A. Yes, ma'am.
THE COURT:
Mr. Regan, as the attorney for the defendant you were present during the foregoing colloquy between the defendant and the trial judge at the time of the defendant's plea of guilty. You've informed the defendant of his rights, particularly the nature of the crime to which he is pleading guilty the maximum sentence the court can impose under the law and the fact that the defendant by entering the plea of guilty is waiving his right to a trial by jury or by the court alone, his right to confront his accusers and cross-examine the witnesses against him, his right against self-incrimination and lastly his only appeal is for a review of jurisdictional defects, and you are entirely satisfied the defendant knowingly, willingly, intelligently and voluntarily entered the plea of guilty knowing all of the consequences; is that correct, Mr. Regan?
MR. REGAN:
It is, Your Honor.
THE COURT:
Is that evidenced by your signature at the top of the page?
MR. REGAN:
Yes, Your Honor.
BY THE COURT:
Q. Mr. England, as the defendant in this case you acknowledge that the foregoing has been read to you, that your attorney and the trial judge have explained the nature of the crime to which you are pleading guilty, all of your rights to you and what rights you are waiving or giving up, and you've been given every opportunity by the trial judge to ask questions in open court about anything you do not understand and about all the consequences regarding your plea of guilty. You are completely satisfied with the explanation of your attorney and the judge. You further acknowledge that your act of pleading guilty is a knowing, intelligent, free and voluntary act on your part and that no one can force you to plead guilty. You know that by pleading guilty it's more than a confession, it's also a conviction. Nothing remains except for the judge to give judgment for sentencing and acknowledging that you are now ready for sentencing; is that correct, Mr. England?
A. Yes, ma'am.
Q. Is that evidenced by your signature in the middle of the page?
A. Yes, ma'am.
BY THE COURT:
I as the trial judge have entered the foregoing colloquy with the defendant; I'm entirely satisfied the defendant was aware of the nature of the crime to which he has pleaded guilty, the defendant did in fact commit said crime and understands the consequences of a plea of guilty, and has made a knowing, intelligent, free and voluntary act of pleading to the above-mentioned crime and there is a factual basis for the acceptance of the plea.
I therefore accept defendant's plea of guilty.
*1187 [Emphasis supplied.]
A review of the record reveals no constitutional infirmity in defendant's guilty pleas. The record reflects that defendant acknowledged reviewing the waiver of rights form with his attorney. The record also shows that defendant was aware he was charged with and pleading guilty to two drug charges. Further, in the waiver of rights form and by the trial judge during the colloquy, defendant was advised of his right to a jury trial, right to confrontation, and his privilege against self-incrimination as required by Boykin v. Alabama, supra. Defendant signed the waiver of rights form, indicating that he understood that he was waiving these rights by pleading guilty. During the colloquy with the trial judge, defendant also indicated that he understood those rights.
During his guilty plea colloquy and in his waiver of rights form, defendant indicated that he had not been forced, coerced, or threatened into entering into guilty pleas. Defendant was informed during the colloquy of the minimum and maximum sentences and of the sentences that would be imposed on each count if his guilty pleas were accepted. After the lengthy colloquy with defendant, the trial court accepted his guilty pleas as knowingly, intelligently, freely, and voluntarily made.
Our review of the record, particularly the transcript of the guilty plea colloquy as set forth in full above, convinces us that, despite defendant's initial reservations to pleading guilty to the charged offenses, based upon his responses to further questioning by the trial court and without referencing his prior profession of innocence, defendant acknowledged that he did, in fact, commit the offenses for which he was charged. Further, we find that defendant knowingly, intelligently and voluntarily entered unqualified guilty pleas-nowhere in the transcript is it specified that defendant was making a qualified plea under Alford . Consequently, no further inquiry by the trial court was necessary.
We find no error in the trial court's acceptance of defendant's guilty pleas that would warrant remand for further inquiry into defendant's voluntariness in entering those pleas. This assignment of error lacks merit.
Pro Se Assignment of Error
In his pro se assignment of error, defendant contends his counsel was ineffective for failing to call a key witness to testify at the suppression hearing and for failing to present exculpatory evidence to the court, which testimony and evidence would have shown that someone other than defendant was responsible for placing the drugs in defendant's vehicle without defendant's knowledge. Defendant argues that his counsel's ineffectiveness prejudiced defendant's defense and forced defendant to plead guilty to a crime he did not commit in order to avoid the risk of an unfair trial. Specifically, defendant claims that because of his counsel's failure to call the key witness to testify, for his advising the key witness to leave court on the day of the suppression hearing, and for his failure to present the alleged exculpatory evidence (i.e. , an affidavit and deposition by the key witness), he feared that he was being "rail-roaded" by his counsel's incompetence and, thus, he pled guilty in order to avoid facing sixty years imprisonment. Additionally, defendant avers that despite his professed innocence, the trial court nonetheless accepted his guilty pleas. For these reasons, defendant seeks to have his convictions set aside.
The Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution safeguard a defendant's right to effective assistance of counsel. According to the United States Supreme Court's opinion in *1188 Strickland v. Washington , 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant asserting an ineffective assistance claim must show: (1) that defense counsel's performance was deficient; and (2) that the deficiency prejudiced the defendant. The defendant has the burden of showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. 2052.
Generally, an ineffective assistance of counsel claim is most appropriately addressed through an application for post-conviction relief filed in the district court, where a full evidentiary hearing can be conducted, if necessary, rather than by direct appeal. State v. Taylor , 04-346 (La. App. 5 Cir. 10/26/04), 887 So.2d 589, 595. If, however, the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised in an assignment of error on appeal, it may be addressed in the interest of judicial economy. Id. Where the record does not contain sufficient evidence to fully explore a claim of ineffective assistance of counsel, the claim should be relegated to post-conviction proceedings under La. C.C.P. arts. 924 -930.8. Id.
In the present case, although the record contains defendant's application for post-conviction relief, we cannot say that the record before us is sufficient to fully explore defendant's claim for ineffective assistance of counsel. For example, to support his claim defendant relies on certain evidence not currently in the record that could be presented at an evidentiary hearing. See State v. Hartshorn , 09-47 (La. App. 5 Cir. 11/10/09), 25 So.3d 172, writ denied , 09-2654 (La. 6/4/10), 38 So.3d 298. Based upon the limited record before us, we find that defendant's ineffective assistance of counsel claim would be more appropriately raised in an application for post-conviction relief in the trial court, where a full evidentiary hearing can be conducted, if necessary.[5] State v. Thornton , 17-470 (La. App. 5 Cir. 3/14/18), 242 So.3d 799, 805.
Errors Patent
As is our routine practice, we have reviewed the record for errors patent in accordance with La. C.Cr.P. art. 920 ; State v. Oliveaux , 312 So.2d 337 (La. 1975) ; and State v. Weiland , 556 So.2d 175 (La. App. 5 Cir. 1990), and found errors requiring correction.
First, the trial court improperly restricted the benefit of parole for defendant's conviction of possession with intent to distribute heroin. On the date of the offense, July 19, 2017, La. R.S. 40:966(B)(4)(a) provided that first offense with intent to distribute heroin was punishable by a term of imprisonment at hard labor for not less than ten nor more than fifty years, at least ten years of which should be served without benefit of probation or suspension of sentence, and may, in addition, be required to pay a fine of not more than fifty thousand dollars.[6] Thus, at the time of the committed offense, the applicable statute only provided for a restriction of probation and suspension of sentence for at least ten years.
*1189 In cases in which a sentencing error by the trial court does not involve the omission of a restrictive term specified by the legislature as part of the sentence, but the imposition of limits beyond what the legislature has authorized in the sentencing statute, this Court will correct the sentence on its own authority under La. C.Cr.P. art. 882 to correct an illegal sentence "at any time." State v. Gayden , 14-813 (La. App. 5 Cir. 2/11/15), 168 So.3d 766, 768. Accordingly, we amend defendant's sentence on count 1 to delete the prohibition of parole eligibility and remand the matter for the trial court to correct the Uniform Commitment Order ("UCO") to reflect that defendant's sentence has no restriction on the benefit of parole. Further, we direct the Clerk of Court for the 24th Judicial District Court to transmit the corrected UCO to the appropriate authorities and the Department of Corrections' ("DOC") legal department. See State v. Long , 12-184 (La. App. 5 Cir. 12/11/12), 106 So.3d 1136, 1142 (citing La. C.Cr.P. art. 892(B)(2) ).
Second, according to the transcript, after sentencing, the trial judge recommended that defendant be allowed to participate in any and all available self-help programs offered at the Department of Corrections' facility in which he was incarcerated; however, the UCO merely reflects that defendant was recommended for substance abuse disorder treatment screening. According to State v. Lynch , 441 So.2d 732, 734 (La. 1983), if "there is a discrepancy between the minutes and the transcript, the transcript must prevail." This Court has previously remanded a case for correction of UCOs in an errors patent review. See State v. Lyons , 13-564 (La. App. 5 Cir. 1/31/14), 134 So.3d 36, writ denied , 14-0481 (La. 11/7/14), 152 So.3d 170. Accordingly, we remand this matter to the trial court with instructions to correct the UCO to reflect that defendant was more generally recommended for participation in any and all self-help programs available to him in the facility in which he is incarcerated. We also direct the Clerk of Court for the 24th Judicial District Court to transmit the corrected UCO to the appropriate authorities in charge of the facility in which defendant has been incarcerated and the DOC's legal department.
DECREE
For the foregoing reasons, we affirm defendant's convictions and sentences. Further, we remand for correction of the UCO as set forth above.
AFFIRMED; REMANDED FOR CORRECTION OF THE UNIFORM COMMITMENT ORDER

Although defendant filed several omnibus motions that were not ruled upon, the motions are considered waived when a defendant does not object to the trial court's failure to hear or rule on a pre-trial motion prior to pleading guilty. See State v. Kelly , 17-221 (La. App. 5 Cir. 12/29/17), 237 So.3d 1226, 1232, writ denied , 18-0153 (La. 11/5/18), 255 So.3d 1051. Further, as there were no rulings, none were preserved for appeal under the holding in State v. Crosby , 338 So.2d 584 (La. 1976).

In North Carolina v. Alford , 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), the United States Supreme Court determined that the fact that a defendant "would not have pleaded except for the opportunity to limit the possible penalty does not necessarily demonstrate that the plea of guilty was not the product of a free and rational choice, especially where the defendant was represented by competent counsel whose advice was that the plea would be to the defendant's advantage." Id. , 400 U.S. at 31, 91 S.Ct. 160. Thereafter, for a "best interests" or Alford plea, "[d]ue process requires a judicial finding of a significant factual basis for a defendant's guilty plea." Id. See State v. Autin , 09-995 (La. App. 5 Cir. 4/27/10), 40 So.3d 193, 196-197, writ denied , 10-1154 (La. 12/10/10), 51 So.3d 725.

The video-taped statement was later admitted into evidence without objection and is a part of the record on appeal.

At the time defendant committed the offense, La. R.S. 40:967(B)(5) did not provide a minimum penalty for a conviction of possession with intent to distribute fentanyl.

Defendant will have to satisfy the requirements of La. C.Cr.P. art. 924, et seq ., to receive a hearing.

The legislature amended La. R.S. 40:966 twice in 2017. La. Acts 2017, No. 319, § 1, effective June 22, 2017, added subsection 1 regarding immunity from prosecution. La. Acts 2017, No. 281, §§ 2, 3, effective August 1, 2017 (subsequent to the date defendant committed the offense), amended the penalty for possession with intent to distribute heroin to hard labor for not less than five years nor more than forty years with a possible fine of not more than fifty thousand dollars.